## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-1469 |
| | ) | |
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| Department of General Services | ) | |
| Slippery Rock University of Pennsylvania, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF LODGING OF [PROPOSED] CONSENT DECREE**

<u>**EXHIBIT A**</u>

*CONSENT DECREE BETWEEN THE UNITED STATES OF AMERICA AND*
*COMMONWEALTH OF PENNSYLVANIA*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No: 10-1469 |
| | ) | |
| | ) | |
| COMMONWEALTH OF PENNSYLVANIA, | ) | |
| DEPARTMENT OF GENERAL SERVICES | ) | |
| and SLIPPERY ROCK UNIVERSITY OF | ) | |
| PENNSYLVANIA | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CONSENT DECREE

**TABLE OF CONTENTS**

I. JURISDICTION AND VENUE ..................................................................................3

II. APPLICABILITY..................................................................................................3

III. DEFINITIONS ....................................................................................................4

IV. SLIPPERY ROCK EMISSION REDUCTIONS AND CONTROLS ......................6

V. CIVIL PENALTY ...............................................................................................9

VI. RESOLUTION OF CLAIMS .............................................................................10

VII. PERIODIC REPORTING...................................................................................10

VIII. REVIEW AND APPROVAL OF SUBMITTALS...............................................12

IX. STIPULATED PENALTIES ..............................................................................12

X. FORCE MAJEURE ...........................................................................................15

XI. DISPUTE RESOLUTION .................................................................................17

XII. PERMITS ........................................................................................................18

XIII. INFORMATION COLLECTION AND RETENTION .......................................19

XIV. NOTICES........................................................................................................20

XV. SALES OR TRANSFERS OF OWNERSHIP INTERESTS................................22

XVI. EFFECTIVE DATE..........................................................................................23

XVII. RETENTION OF JURISDICTION ...................................................................23

XVIII. MODIFICATION.............................................................................................24

ii

XIX. GENERAL PROVISIONS.....................................................................................24

XX. SIGNATORIES AND SERVICE ............................................................................25

XXI. PUBLIC COMMENT ...........................................................................................26

XXII. TERMINATION.....................................................................................................26

XXIII. FINAL JUDGMENT..............................................................................................28

WHEREAS, Plaintiff, the United States of America ("the United States"), on behalf of the United States Environmental Protection Agency ("EPA") has filed a Complaint for injunctive relief and civil penalties pursuant to Section 113(b) of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. § 7413(b), alleging that Defendants, Slippery Rock University of Pennsylvania ("SRU") and the Commonwealth of Pennsylvania's Department of General Services ("DGS") (collectively referred to as "Defendants"), violated certain requirements of the Act, 42 U.S.C. §§ 7401 et seq., at the common exhaust stack for coal-fired boilers numbered 1, 2 and 4 (the "Coal-Fired Boilers"), at Slippery Rock University of Pennsylvania, located in Butler County, Slippery Rock, Pennsylvania ("Slippery Rock" or the "Facility");

WHEREAS, according to an executed non-recorded Interagency Agreement ("Agreement") of June 7, 2002, for the transfer of real property, DGS owns and Pennsylvania's State System of Higher Education ("PASSHE") and/or SRU assumed occupancy, custody, and control (but not fee title) to all land and buildings (including the boiler plant) owned by the Commonwealth of Pennsylvania on the campus of Slippery Rock. PASSHE/SRU also assumed in this Agreement, *inter alia*, complete legal liability and all financial responsibility for all fines, penalties, and judgments imposed in connection with PASSHE's/SRU's use, control, and occupation of Slippery Rock.

WHEREAS, in the Complaint, the United States alleges, *inter alia,* that SRU is in violation of Sections 110 and 113 of the Act, 42 U.S.C. §§ 7410 and 7413, through its failure to operate the Coal-Fired Boilers in compliance with applicable particulate matter emission limits provided in the Commonwealth of Pennsylvania's State Implementation Plan (the "Pennsylvania

1

SIP") at the Facility; SRU's failure to operate the Coal-Fired Boilers in compliance with the applicable opacity limits provided in the Pennsylvania SIP at the Facility; and SRU's violation of Section 502 of the Act, 42 U.S.C. § 7661a, through its failure to comply with certain requirements in Slippery Rock's Title V Operating Permit, No. 10-00062 (issued and effective on August 27, 2003) (the "Title V Permit");

WHEREAS, the Complaint alleges claims upon which relief can be granted against the Defendants under Sections 113 and 502 of the Act, 42 U.S.C. §§ 7413 and 7661a;

WHEREAS, the United States provided the Defendants and the Commonwealth of Pennsylvania's Department of Environmental Protection ("PADEP") with actual notice of the alleged violations in accordance with Section 113(a)(1) and (b) of the Act, 42 U.S.C. § 7413(a)(1) and (b);

WHEREAS, the Parties have agreed that settlement of this action is in the best interest of the Parties and in the public interest, and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith and at arm's length and that this Consent Decree is fair, reasonable, consistent with the goals of the Act, and in the public interest; and

WHEREAS, the Parties have consented to entry of this Consent Decree without trial of any issues;

2

NOW, THEREFORE, without any admission of fact or law, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.   This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and pursuant to Sections 113 and 502 of the Act, 42 U.S.C. §§ 7413 and 7661a.  Venue is proper under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and under 28 U.S.C. § 1391(b) and (c).  Solely for the purposes of this Consent Decree and the underlying Complaint, the Defendants waive all objections and defenses that they may have to the Court's jurisdiction over this action, to the Court's jurisdiction over the Defendants, and to venue in this District.  The Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.  For purposes of the Complaint filed by the Plaintiff in this matter and resolved by the Consent Decree, and for purposes of entry and enforcement of this Consent Decree, the Defendants waive any defense or objection based on standing.  Except as expressly provided for herein, this Consent Decree shall not create any rights in any party other than the Parties to this Consent Decree.  Except as provided in Section XXI (Public Comment) of this Consent Decree, the Parties consent to entry of this Consent Decree without further notice.

## II. APPLICABILITY

2.   The provisions of this Consent Decree shall, upon entry, apply to and be binding upon the Defendants and their agents, employees, contractors, successors and assigns.

3.   The Defendants shall provide a copy of this Consent Decree to all vendors, suppliers,

3

consultants, contractors, agents, and any other company or other organization retained to perform any of the work required by this Consent Decree.  Notwithstanding any retention of contractors, subcontractors, or agents to perform any work required under this Consent Decree, the Defendants shall be responsible for ensuring that all work is performed in accordance with the requirements of this Consent Decree.  In any action to enforce this Consent Decree, the Defendants shall not assert as a defense the failure of their officers, directors, employees, servants, agents, or contractors to take actions necessary to comply with this Consent Decree, unless it is determined to be a Force Majeure Event and satisfies the Force Majeure provisions of this Consent Decree.

## III.  DEFINITIONS

4.  "Baghouse" means a device or facility in which particulates are removed from a stream of exhaust gases as the stream passes through various fabric bags before the stream is discharged to the atmosphere.

5.  "Clean Air Act" or "Act" means the federal Clean Air Act, 42 U.S.C. §§7401-7671q, and its implementing regulations.

6.  "Consent Decree" or "Decree" means this Consent Decree.

7.  "Defendants" means SRU and DGS.

8.  "EPA" means the United States Environmental Protection Agency.

9.  "lb/MMBtu" means one pound of total particulate matter per million British thermal units of heat input.

10.  "Malfunction" means malfunction of a Unit, as that term is defined under 40 C.F.R. § 60.2.

11.  "PADEP" shall mean the Pennsylvania Department of Environmental Protection.

4

12 "Parties" means the United States of America and the Defendants, SRU and DGS. "Party" means one of the named "Parties."

13. "PM" means total particulate matter, measured in accordance with the provisions of this Consent Decree.

14. "PM Emission Rate" means the average number of pounds of PM emitted per million British thermal units of heat input ("lbs/MMBtu") from a boiler stack, as measured in an annual stack test from the boiler stack, in accordance with the reference method set forth in 40 C.F.R. Part 60, Appendix A, Method 5 (filterable portion only) or Method 17 (filterable portion only).

15. "Title V Permit" means the Title V Operating Permit, No. 10-00062, issued August 27, 2002, to SRU pursuant to Subchapter V of the Act, 42 U.S.C. §§ 7661-7661e, as it may be amended, modified, or reissued.

16. "Unit" means, for the purposes of this Consent Decree, collectively, the stationary equipment that feeds coal to the Coal-Fired Boiler, the Coal-Fired Boiler that produces steam, the equipment necessary to operate the Coal-Fired Boiler, and all ancillary equipment, including the Baghouse and any other pollution control equipment or systems necessary for the production of steam at the Facility. Coal-Fired Boilers 1, 2, and 4 are Units for purposes of this Consent Decree.

## IV. SLIPPERY ROCK EMISSION REDUCTIONS AND CONTROLS

17.  SRU shall comply with the PM Emission Rate of 0.4 lb/MM Btu of heat input as required under the Pennsylvania SIP, and with the visible emission standard set forth in the Pennsylvania SIP (25 Pa. Code §§123.11 and 123.41) at all times.  Until such time as the Coal-Fired Boiler Units are controlled for particulate matter emissions by a Baghouse control system, as provided in Paragraphs 19 and 20 below, Defendants shall comply with the Title V Permit.  After the Coal-Fired Boiler Units are controlled with a Baghouse emission control system, Defendants shall comply with 25 Pa. Code §§123.11 and 123.41, the Pennsylvania SIP, and with any and all permits issued for the new Coal-Fired Boiler Unit operational system at all times.

18.  In order to ensure that Defendants meet the particulate mass emission limit in the Pennsylvania SIP during low load operations, Defendants have constructed a coal storage building to protect all boiler fuel coal from degradation by the elements (the "Coal Storage Building").  All coal fuel shall be stored in the Coal Storage Building and all coal delivered to Slippery Rock for use as fuel shall meet the coal specifications provided in Slippery Rock's Title V Permit.

19.  No later than September 30, 2011, Defendants shall install and commence continuous operation of a Baghouse (fabric filter) particulate emission control system to reduce particulate emissions from all Coal-Fired Boilers at the Facility. The Baghouse shall operate whenever any Coal-Fired Boiler is operating at the Facility.  After September 30, 2011, SRU shall not operate any Coal-Fired Boiler when the Baghouse is not operating.

20.  SRU shall operate the Coal-Fired Boiler Units at the Facility in accordance with good combustion practices, good air pollution control practices, and good operating practices, as required under the Pennsylvania SIP to comply with the limits provided in 25 Pa. Code §§ 123.11 and 123.41.

21.  Within 20 days after SRU completes the installation of any equipment required by Paragraphs 19 and 20, SRU shall submit to EPA and PADEP a proposed protocol for the required stack tests and visible emission opacity tests.  The test protocol shall be prepared

6

according to 40 C.F.R. Part 60, Appendix A, Methods 5 and 9 and applicable Pennsylvania law (including, but not limited to, 25 Pa. Code §§ 139.11 and 139.12). If EPA notifies SRU that revisions to the testing protocol are necessary, SRU must revise the protocol no later than fifteen (15) days after receipt of EPA's written notification. SRU shall provide written notice to EPA and PADEP no later than twenty (20) days prior to the initiation of each stack test at each affected Unit.

22. Within 90 days after SRU completes the installation of the Baghouse required by Paragraph 19, and operates this Unit as required by Paragraph 20, SRU shall conduct a performance test demonstration to ensure that the PM and opacity emissions meet the requirements set forth in the Pennsylvania SIP, and can be consistently achieved in practice for the specific Coal-Fired Boilers, including all requirements pertaining to proper operation and maintenance of control equipment. SRU shall submit the results of each PM performance test (including a Method 9 opacity check test) to EPA and PADEP within sixty (60) days of completion of each performance test. If the performance test demonstration shows that a Coal-Fired Boiler with baghouse control does not meet the required Pennsylvania SIP emission limitations for PM and opacity, SRU shall submit a report to EPA and PADEP within sixty (60) days of completion of each performance test proposing alternative emission controls, the amount of time reasonably expected to install those controls, and interim measures intended to control PM and opacity emissions pending final installation and operation of the alternative controls.

23. Beginning in calendar year 2012, and continuing thereafter SRU shall conduct PM performance testing on the Coal-Fired Boiler Units at the Facility for PM mass emissions and visible opacity once every four (4) years in accordance with the Act, the Title V Permit and the Pennsylvania SIP. SRU shall provide written notice to EPA and PADEP twenty (20) days prior to any PM performance testing on each of the Coal-Fired Boiler Units.

24. SRU shall conduct the performance tests for each Unit at the Facility required by Paragraphs 22 and 23, in accordance with 40 C.F.R. Part 60, Appendix A, Method 5 and applicable Pennsylvania law (25 Pa. Code §§ 139.11 and 139.12). Visible emission opacity readings in

accordance with EPA Reference Test Method 9 must also be taken simultaneously during the mass emission PM performance test at each Unit.

25.    PM and opacity stack test reports shall contain information on the volumetric flow rate (dry standard cubic feet per minute), particulate emission concentration (grains per dry standard cubic foot), and particulate emission rate (in lb/MMBtu of heat input) for each test.

26. Malfunctions  SRU shall notify EPA in writing of each Malfunction of a Unit, including any Malfunction at or from the Baghouse, as soon as practicable, but in no event later than seven (7) business days following the date that SRU first knew, or by the exercise of due diligence should have known, of the Malfunction.  SRU shall be deemed to know of any circumstance which SRU, its contractors, or any entity controlled by SRU knew or should have known.  In this notice, SRU shall describe the anticipated length of time that the Malfunction may persist, the cause or causes of the Malfunction, all measures taken or to be taken by SRU to minimize the duration of the Malfunction, and the schedule by which SRU proposes to implement those measures.

    a.    SRU shall adopt all reasonable measures to minimize the duration of such Malfunctions and, consistent with 25 Pa. Code §§127.12(a)(10) and 127.444, shall, to the extent practicable, maintain and operate any affected Unit and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

    b.    A Malfunction, as defined in Paragraph 10 of this Consent Decree, does not constitute a Force Majeure Event pursuant to Section X (Force Majeure) of this Consent Decree unless the Malfunction also meets the definition of a Force Majeure Event, as provided in Section X.

27.   Upon entry by the Court of this Consent Decree, SRU shall comply with the Source Level
Reporting Requirement Set forth in Section D.V of the Title V Permit which requires SRU to
burn at Units 1, 2, and 4, only bituminous coal that meets the Title V Permit specifications for
ash content, heat content and sulfur content.  SRU shall submit to PADEP and EPA copies of all
coal sampling documents demonstrating compliance or non-compliance with Section D.V of the
Title V Permit with the report required pursuant to Paragraph 33.  The requirements of this
paragraph shall terminate upon submittal by SRU of the test results pursuant to Paragraph 25
herein and acceptance by EPA and PaDEP of said results.  SRU must obtain all applicable
permits and/or plan approvals from PADEP before commencing any modification, alteration or
construction at an SRU Unit which has an effect on the pollutant emission rates from the Coal-
Fired Boilers.

## V.  CIVIL PENALTY

28. a.   Within thirty (30) calendar days after entry of this Consent Decree, SRU shall pay to the
United States a civil penalty in the amount of $50,000.  The civil penalty shall be paid by
Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with
current EFT procedures, referencing USAO File Number [               ] and DOJ Case Number
90-5-2-1-07931 and the civil action case name and case number of this action.  The costs of such
EFT shall be SRU's responsibility.  Payment shall be made in accordance with instructions
provided to the Defendants by the Financial Litigation Unit of the U.S. Attorney's Office for the
Western District of Pennsylvania.  Any funds received after 2:00 p.m. EDT shall be credited on
the next business day.  At the time of payment, SRU shall provide notice of payment, referencing
the USAO File Number, the DOJ Case Number, and the civil action case name and case number,
to the Department of Justice and to EPA's Docket Clerk (3RC00) for Region 3, in accordance
with Section XIV (Notices) of this Consent Decree.

   b.   Failure to timely pay the civil penalty shall subject SRU to interest accruing from the date
payment is due until the date payment is made at the rate prescribed by 28 U.S.C. § 1961, and
shall render SRU liable for all charges, costs, fees, and penalties established by law for the

benefit of a creditor or of the United States in securing payment.

29.    Payments made pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax-deductible expenditures for purposes of federal law.

## VI. <u>RESOLUTION OF CLAIMS</u>

30.    This Consent Decree settles all civil claims alleged in the Plaintiff's Complaint against the Defendants for violations of the Act at Slippery Rock prior to and through the date of the lodging of this Consent Decree.

31.    <u>Third Parties</u>. This Consent Decree does not limit or affect the rights of Defendants or the United States, as against any third party, nor does it limit the rights of such third parties against the Defendants. This Consent Decree shall not constitute an admission by either party as to any third party.

## VII. <u>PERIODIC REPORTING</u>

32.    Beginning thirty (30) days after the end of the first full calendar quarter following the entry of this Consent Decree, continuing on a semi-annual basis (i.e., every six months covering the prior six months) until December 31, 2015, or until this Consent Decree is terminated, whichever is earliest, and in addition to any other express reporting requirement in this Consent Decree, SRU shall submit to EPA a progress report, containing

      a.     all information necessary to determine compliance with this Consent Decree; and

      b.     all information indicating that the installation and commencement of operation for a pollution control device may be delayed, including the nature and cause of the delay, and any steps taken by SRU to mitigate such delay.

33.    In any periodic progress report submitted pursuant to this Section, SRU may incorporate by reference information previously submitted under their Title V Permit requirements, provided that SRU attaches the Title V Permit report (or pertinent portions of such report) and provides a specific reference to the provisions of the Title V Permit report that are responsive to the information required in the periodic progress report.

10

34.   In addition to the progress reports required pursuant to this Section, SRU shall provide a written report to EPA of any violation of the requirements of this Consent Decree, including exceedances of PM emission rates and visible opacity requirements within thirty (30) business days of when SRU knew or should have known of any such violation.  In this report, SRU shall explain the cause or causes of the violation and all measures taken or to be taken by the Defendants to prevent such violations in the future.  Exceedances of the PM emission rates shall be reported within sixty (60) days of the completion of the stack test that demonstrates such non-compliance.  In this report, SRU shall explain the cause or causes of the violation and all measures taken or to be taken by SRU to prevent such violations in the future.

35.   Each report required by this Consent Decree shall be signed by the Director of Facilities, the Vice President for Finance or, in their absence, the President of SRU and shall contain the following certification:

> This information was prepared either by me or under my direction or supervision
> in accordance with a system designed to assure that qualified personnel properly
> gather and evaluate the information submitted.  Based on my evaluation, or the
> direction and my inquiry of the person(s) who manage the system, or the person(s)
> directly responsible for gathering the information, I hereby certify under penalty of
> law that, to the best of my knowledge and belief, this information is true, accurate,
> and complete.  I understand that there are significant penalties for submitting
> false, inaccurate, or incomplete information to the United States.

11

## VIII.  REVIEW AND APPROVAL OF SUBMITTALS

36.    SRU shall submit each plan, report, or other submission to EPA whenever such a document is required to be submitted for review or approval pursuant to this Consent Decree.  EPA may approve the submittal or decline to approve it and provide written comments.  Within sixty (60) days of receiving written comments from EPA, SRU shall either: (a) revise the submittal consistent with the written comments and provide the revised submittal for final approval to EPA; or (b) submit the matter for dispute resolution, including the period of informal negotiations, under Section XI (Dispute Resolution) of this Consent Decree.

37.    Upon receipt of EPA's final approval of the submittal, if applicable, or upon completion of the dispute resolution process, SRU shall implement the approved submittal in accordance with the schedule specified therein.

## IX.  STIPULATED PENALTIES

38.    For any failure to comply with the terms of this Consent Decree, and subject to the provisions of Sections X (Force Majeure) and XI (Dispute Resolution) of this Consent Decree, Defendants shall pay, within thirty (30) days after receipt of written demand to SRU by the United States, the following stipulated penalties to the United States:

| Consent Decree Violation | Stipulated Penalty (Per day per violation, unless otherwise specified) |
| --- | --- |
| a.  Failure of SRU to pay the civil penalty as specified in Section V (Civil Penalty) of this Consent Decree | $10,000 |
| b.  After November 30, 2011, failure of SRU to comply with any applicable PM emission rate where the violation is less than 5% in excess of the limits set forth in the Pennsylvania SIP on any Unit at the Facility | $2,500 |
| c.  After November 30, 2011, failure of SRU to comply with any applicable emission rate for PM, where the violation is | $5,000 |

12

| | |
|---|---|
| equal to or greater than 5% but less than 10% in excess of the limits set forth in the Pennsylvania SIP on any Unit at the Facility | |
| d.  After November 30, 2011, failure of SRU to comply with any applicable emission rate for PM, where the violation is equal to or greater than 10% in excess of the limits set forth in the Pennsylvania SIP on any Unit at the Facility | $10,000 |
| e.  After November 30, 2011, failure of SRU to comply with visible emission standard in the Pennsylvania SIP on any Unit at the Facility | $5,000 |
| f.  Failure of DGS to install, or to commence operation, or of SRU to continue operation of any baghouse required to be installed by this Consent Decree at the Facility | $10,000 per day during the first 30 days; $20,000 per day thereafter |
| g.  Failure of SRU to conduct performance tests of PM emissions as required by the Consent Decree after installation of the new Baghouse at the Facility | $1,000 |
| h.  Failure of SRU to conduct visible emission tests per Method 9 on any unit as required by the Consent Decree | $1,000 |
| i.  Failure of SRU to timely submit, modify, or implement, as approved, the reports, plans, studies, analyses, protocols, or other submittals required by this Consent Decree | $750 per day during the first 10 days, $1,000 per day thereafter |
| j.  Late performance of any performance test or other annual emissions test for PM or opacity as required by the Consent Decree | $750 per day during the first 10 days; $1,000 per day thereafter |
| | |
| k.  Any other violation of this Consent Decree | $1,000 |

39.    All stipulated penalties shall begin to accrue on the day after the performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate stipulated penalties for separate

violations of this Consent Decree.

40.    SRU shall pay all stipulated penalties to the United States within thirty (30) days of receipt of written demand to SRU from the United States, and shall continue to make such payments every thirty (30) days thereafter until the violation(s) no longer continues, unless SRU elects within twenty (20) days of receipt of written demand to SRU from the United States to dispute the accrual of stipulated penalties in accordance with the provisions in Section XI (Dispute Resolution) of this Consent Decree.

41.    Failure to timely pay the stipulated penalty shall subject SRU to interest accruing from the date payment is due until the date payment is made at the rate prescribed by 28 U.S.C. § 1961, and shall render SRU liable for all charges, costs, fees, and penalties established by law for the benefit of a creditor or of the United States in securing payment.

42.    Stipulated penalties shall continue to accrue as provided in Paragraph 40 during any dispute, with interest on accrued stipulated penalties payable, but need not be paid until the following:

a. If the dispute is resolved by agreement, or by a decision of Plaintiff pursuant to Section XI (Dispute Resolution) of this Consent Decree that is not appealed to the Court, accrued stipulated penalties agreed or determined to be owing, together with accrued interest, shall be paid within thirty (30) days of the effective date of the agreement or of the receipt of Plaintiff's decision;

b. If the dispute is appealed to the Court and Plaintiff prevails in whole or in part, SRU shall, within sixty (60) days of receipt of the Court's decision or order, pay all accrued stipulated penalties determined by the Court to be owing, together with accrued interest, except as provided in Subparagraph (c);

c. If the Court's decision is appealed by any Party, SRU shall, within fifteen (15) days of receipt of the final appellate court decision, pay all accrued stipulated penalties determined to be owing, together with accrued interest.

SRU need not pay any stipulated penalties based on violations which it disputes and

ultimately prevails under the Dispute Resolution provisions of this Consent Decree.

43. All stipulated penalties shall be paid in the manner set forth in Section V (Civil Penalty) of this Consent Decree.

44. EPA, in its sole and unreviewable discretion, may reduce the amount of stipulated penalties prescribed by this Section of the Consent Decree.

45. Should SRU fail to pay stipulated penalties in compliance with the terms of this Consent Decree, the Plaintiff shall be entitled to collect interest on such penalties, as provided for in 28 U.S.C. § 1961.

46. The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States by reason of Defendants' failure to comply with any requirement of this Consent Decree or applicable law, except that for any violation of the Act for which this Consent Decree provides for payment of a stipulated penalty, Defendants shall be allowed a credit for stipulated penalties paid against any statutory penalties also imposed for such violation.

## X. **FORCE MAJEURE**

47. Force Majeure Events.    For purposes of this Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of the Defendants, their contractors, or any entity controlled by SRU that delays compliance with any provision of this Consent Decree or otherwise causes a violation of any provision of this Consent Decree despite the Defendants' best efforts to fulfill the obligation. "Best efforts to fulfill the obligation" include using best efforts to anticipate any potential Force Majeure Event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay or violation is minimized to the greatest extent possible.

48. Notice of Force Majeure Events. If any event occurs or has occurred that may delay compliance with or otherwise cause a violation of any obligation under this Consent Decree, as to which Defendants intend to assert a claim of Force Majeure, Defendants shall notify the United States in writing as soon as practicable, but in no event later than fourteen (14) business days

following the date Defendants first knew, or by the exercise of due diligence should have known, that the event caused or may cause such delay or violation. In this notice, Defendants shall reference this Paragraph of this Consent Decree and describe the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or violation, all measures taken or to be taken by Defendants to prevent or minimize the delay or violation, the schedule by which SRU proposes to implement those measures, and Defendants' rationale for attributing a delay or violation to a Force Majeure Event. Defendants shall adopt all reasonable measures to avoid or minimize such delays or violations. Defendants shall be deemed to know of any circumstance which SRU, their contractors, or any entity controlled by Defendants knew or should have known.

49. <u>Failure to Give Notice</u>. If the Defendants fail to comply with the notice requirements in the preceding Paragraph, the Plaintiff may void the Defendants' claim for Force Majeure as to the specific event for which the Defendants have failed to comply with such notice requirement.

50. <u>Plaintiff's Response</u>. The Plaintiff shall notify the Defendants in writing regarding the Defendants' claim of Force Majeure provided under Paragraph 48. If the Plaintiff agrees that a delay in performance has been or will be caused by a Force Majeure Event, the Parties shall stipulate to an extension of deadline(s) for performance of the affected compliance requirement(s) by a period equal to the delay actually caused by the event. In such circumstances, an appropriate modification shall be made pursuant to Section XVIII (Modification) of this Consent Decree.

51. <u>Disagreement</u>. If the Plaintiff does not accept the Defendants' claim of Force Majeure, or if the Parties cannot agree on the length of the delay actually caused by the Force Majeure Event, the matter shall be resolved in accordance with Section XI (Dispute Resolution) of this Consent Decree.

52. <u>Burden of Proof</u>. In any dispute regarding Force Majeure, the Defendants shall bear the burden of proving that any delay in performance or any other violation of any requirement of this Consent Decree was caused by or will be caused by a Force Majeure Event. The Defendants shall also bear the burden of proving that the Defendants gave the notice required by Paragraph 48 and the burden of proving the anticipated duration and extent of any delay(s) attributable to a Force

Majeure Event. An extension of one compliance date based on a particular event may, but will not necessarily, result in an extension of a subsequent compliance date.

53. Events Excluded. Unanticipated or increased costs or expenses associated with the performance of the Defendants' obligations under this Consent Decree shall not constitute a Force Majeure Event.

54. Extensions or Modifications by Agreement.    As part of the resolution of any matter submitted to this Court under Section XI (Dispute Resolution) of this Consent Decree regarding a claim of Force Majeure, the Parties by agreement, or this Court by order, may in appropriate circumstances extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of any delay agreed to by the Plaintiff and the Defendants or approved by the Court. The Defendants shall be liable for stipulated penalties for their failure thereafter to complete the work in accordance with the extended or modified schedule.

## XI. DISPUTE RESOLUTION

55. The dispute resolution procedure provided by this Section shall be available to resolve all disputes arising under this Consent Decree, provided that the Party invoking such procedure has first made a good faith attempt to resolve the matter with the other Party.

56. The dispute resolution procedure required herein shall be invoked by one Party giving written notice to the other Party advising of a dispute pursuant to this Section. The notice shall describe the nature of the dispute and shall state the noticing Party's position with regard to such dispute. The Party receiving such a notice shall acknowledge receipt of the notice, and the noticing Party shall expeditiously schedule a meeting to discuss the dispute informally not later than fourteen (14) days following receipt of such notice.

57. Disputes submitted to dispute resolution under this Section shall, in the first instance, be the subject of informal negotiations among the disputing Parties. Such period of informal negotiations shall not extend beyond thirty (30) calendar days from the date of the first meeting among the disputing Parties' representatives unless they agree in writing to shorten or extend this period. During the informal negotiations period, the disputing Parties may also submit their

dispute to a mutually-agreed-upon non-binding alternative dispute resolution ("ADR") forum if the Parties agree that the non-binding ADR activities can be completed within the 30-day informal negotiations period (or such longer period as the Parties may agree to in writing).

58.  If the disputing Parties are unable to reach agreement during the informal negotiation period, the Plaintiff shall provide the Defendants with a written summary of its position regarding the dispute.  The written position provided by the Plaintiff shall be considered binding unless, within forty-five (45) calendar days thereafter, the Defendants seek judicial resolution of the dispute by filing a petition with this Court.  The Plaintiff may respond to the petition within forty-five (45) calendar days of filing.

59.  Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set out in this Section may be shortened by the Court upon motion of one of the Parties to the dispute.

60.  The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes.  In their initial filings with the Court under Paragraph 57, the disputing Parties shall state their respective positions as to the applicable standard of law for resolving the particular dispute.

## XII.  PERMITS

61.  Unless expressly stated otherwise in this Consent Decree, in any instance where otherwise applicable law or this Consent Decree requires the Defendants to secure a permit to authorize construction or operation of any air emission or air pollution control device, including all preconstruction, construction, and operating permits required under state law, the Defendants shall make such application in a timely manner.  Defendants shall identify and obtain all applicable permits, licenses and approvals required for performance of activities or work required by this Consent Decree in sufficient time to perform the activities or work as scheduled.

62.  When such permits are required, the Defendants shall complete and submit applications for such permits to the appropriate authorities to allow sufficient time for all legally required processing and review of the permit request, including requests for additional information by the permitting authorities.  Any failure by the Defendants to submit a timely permit application for

18

any Unit at Slippery Rock shall bar any use by the Defendant of Section X (Force Majeure) of this Consent Decree, where a Force Majeure claim is based on permitting delays.

63. Within ninety (90) days from the date of entry of this Consent Decree, and in accordance with federal and/or state requirements for modifying or renewing a Title V Permit, Defendants shall file a plan approval application to construct and/or install the Baghouse required under Section IV of this Consent Decree with PADEP, and apply for modifications to the Title V Permit to incorporate a schedule for construction or installation of the control technology requirements established under Section IV of this Consent Decree.

64. The Defendants shall provide the United States with a copy of each application for a federally enforceable permit to allow for timely participation in any public comment opportunity.

65. Notwithstanding the reference to a Title V Permit in this Consent Decree, the enforcement of such permits shall be in accordance with their own terms and the Act. The Title V Permit shall not be enforceable under this Consent Decree, although any term or limit established by or under this Consent Decree shall be enforceable under this Consent Decree regardless of whether such term or limit has or will become part of a Title V Permit.

66. Prior to termination of this Consent Decree, Defendants shall obtain enforceable provisions in their Title V Permit for SRU which incorporate the requirements and limitation related to Defendants' compliance with applicable particulate matter emission and opacity limits provided in the Pennsylvania SIP at the Coal-Fired Boilers, as well as Defendants' incorporation of the requirements to construct and operate the Baghouse control system in compliance with applicable emission limits and reporting requirements.

## XIII.  INFORMATION COLLECTION AND RETENTION

67. Any authorized representative of the United States, including its attorneys, contractors, and consultants, upon presentation of credentials, shall have a right of entry upon the premises of SRU at any reasonable time for the purpose of:

    a.     monitoring the progress of activities required under this Consent Decree;

    b.     verifying any data or information submitted to the Plaintiff in accordance with the terms of this Consent Decree;

    c.        obtaining samples and, upon request, splits of any samples taken by the Defendants or their representatives, contractors, or consultants; and

    d.        assessing the Defendants' compliance with this Consent Decree.

68.  The Defendants shall retain, and instruct its contractors and agents to preserve, all non-identical copies of all records and documents (including records and documents in electronic form) now in its or its contractors' or agents' possession or control, and that directly relate to the Defendants' performance of its obligations under this Consent Decree, until December 31, 2020. This record retention requirement shall apply regardless of any document retention policy to the contrary.

69.  All information and documents submitted by the Defendants pursuant to this Consent Decree shall be subject to public disclosure based on requests under applicable law providing for such disclosure unless (a) the information and documents are subject to legal privileges or protection or (b) the Defendants claim and substantiate in accordance with 40 C.F.R. Part 2 that the information and documents contain confidential business information.

70.  Nothing in this Consent Decree shall limit the authority of the Plaintiff to conduct tests and inspections at SRU under Section 114 of the Act, 42 U.S.C. § 7414, or any other applicable federal or state laws, regulations or permit.

## XIV.  <u>NOTICES</u>

71. Unless otherwise provided herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

        **As to the United States of America**:
        Chief, Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        P.O. Box 7611
        Washington, D.C.  20044-7611
        DOJ# 90-5-2-1-07931

        and

James Hagedorn
U. S. EPA, Region 3
Air Protection Division
1650 Arch Street (3AP12)
Philadelphia, PA 19103

and

Dennis M. Abraham
Senior Assistant Regional Counsel
U. S. EPA, Region 3
Office of Regional Counsel
1650 Arch Street (3RC10)
Philadelphia, PA 19103

**As to the PADEP:**

Mr. John Guth
Air Director
Meadville Regional Office
230 Chestnut Street
Meadville, Pennsylvania 16335

As to SRU:

Slippery Rock University
Vice President for Finance and Administration
Old Main
One Morrow Way
Slippery Rock, PA 16057

 and

Slippery Rock University
Facilities and Planning
Maintenance Center
One Morrow Way
Slippery Rock, PA 16057

72. As provided in Paragraph 73, e-mail notification to EPA may be provided to abraham.dennis@epa.gov and hagedorn.james@epa.gov.

73. All notifications, communications or submissions made pursuant to this Section shall be sent either by: (a) overnight mail or delivery service; (b) certified or registered mail, return receipt requested; or (c) electronic transmission, unless the recipient is not able to review the transmission in electronic form. All notifications, communications and transmissions (a) sent by overnight, certified or registered mail shall be deemed submitted on the date they are postmarked, or (b) sent by overnight delivery service shall be deemed submitted on the date they are delivered to the delivery service. All notifications, communications, and submissions made by electronic means shall be electronically signed and certified, and shall be deemed submitted on the date that the Defendants receive written acknowledgment of receipt of such transmission.

74. Any Party may change either the notice recipient or the address for providing notices to it by serving the other Party or Parties with a notice setting forth such new notice recipient or address.

## XV. SALES OR TRANSFERS OF OWNERSHIP INTERESTS

75. If the Defendants propose to sell or transfer part or all of their ownership interest in any of their real property or operations subject to this Consent Decree ("Ownership Interest") to an entity unrelated to the Defendants ("Third Party Purchaser"), they shall advise the Third Party Purchaser in writing of the existence of this Consent Decree prior to such sale or transfer, and shall send a copy of such written notification to the United States pursuant to Section XIV (Notices) at least sixty (60) days before such proposed sale or transfer.

76. No sale or transfer of an Ownership Interest shall take place before the Third Party Purchaser and the United States have executed, and the Court has approved, a modification pursuant to Section XVIII (Modification) of this Consent Decree making the Third Party Purchaser a party defendant to this Consent Decree and jointly and severally liable with the Defendants for all the requirements of this Consent Decree that may be applicable to the transferred or purchased Ownership Interests, except as provided in Paragraph 90, below.

22

77. This Consent Decree shall not be construed to impede the transfer of any Ownership Interests between the Defendants and any Third Party Purchaser as long the requirements of this Consent Decree are met. In addition, this Consent Decree shall not be construed to prohibit a contractual allocation–as between the Defendants and any Third Party Purchaser of Ownership Interests–of the burdens of compliance with this Decree, provided that both the Defendants and such Third Party Purchaser shall remain jointly and severally liable to the United States for the obligations of the Decree applicable to the transferred or purchased Ownership Interests, except as provided in Paragraph 90.

78. If the United States agrees, the United States, the Defendants and the Third Party Purchaser that has become a party defendant to this Consent Decree pursuant to Paragraph 75 may execute a modification that relieves Defendant of its liability under this Consent Decree for, and makes the Third Party Purchaser liable for, all obligations and liabilities applicable to the purchased or transferred Ownership Interests. Notwithstanding the foregoing, however, the Defendants may not assign, and may not be released from, any obligation under this Consent Decree that is not specific to the purchased or transferred Ownership Interests, including the obligations set forth in Section V (Civil Penalty). The Defendants may propose and the Plaintiff may agree to restrict the scope of joint and several liability of any purchaser or transferee for any obligations of this Consent Decree that are not specific to the purchased or transferred Ownership Interests to the extent such obligations may be adequately separated in an enforceable manner.

## XVI. **EFFECTIVE DATE**

79. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVII. **RETENTION OF JURISDICTION**

80. Continuing Jurisdiction. The Court shall retain jurisdiction of this case after entry of this Consent Decree to enforce compliance with the terms and conditions of this Consent Decree and to take any action necessary or appropriate for its interpretation, construction, execution, modification, or adjudication of disputes. During the term of this Consent Decree, any Party to this Consent Decree may apply to the Court for any relief necessary to construe or effectuate this

Consent Decree.

## XVIII.  MODIFICATION

81.  The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIX.  GENERAL PROVISIONS

82.  This Consent Decree is not a permit.  Compliance with the terms of this Consent Decree does not guarantee compliance with all applicable federal, state, or local laws or regulations.  The Consent Decree does not relieve the Defendants from any obligation to comply with other state and federal requirements under the Clean Air Act or Pennsylvania law.  This Consent Decree does not apply to any claim(s) of alleged criminal liability.

83.  In any subsequent administrative or judicial action initiated by the Plaintiff for injunctive relief or civil penalties relating to the facilities covered by this Consent Decree, the Defendants shall not assert any defense or claim based upon principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, or claim splitting, or any other defense based upon the contention that the claims raised by the Plaintiff in the subsequent proceeding were brought, or should have been brought, in the instant case.

84.  Except as specifically provided by this Consent Decree, nothing in this Consent Decree shall relieve the Defendants of their obligations to comply with all applicable federal, state, and local laws and regulations.  Nothing contained in this Consent Decree shall be construed to prevent or limit the rights of the Plaintiff to obtain penalties, injunctive relief or other relief under the Act or other federal, state, or local statutes, regulations, or permits.

85.  Every term expressly defined by this Consent Decree shall have the meaning given to that term by this Consent Decree and, except as otherwise provided in this Consent Decree, every other term used in this Consent Decree that is also a term under the Act or the regulations implementing the Act shall mean in this Consent Decree what such term means under the Act or those implementing regulations.

86.  Nothing in this Consent Decree is intended to, or shall, alter or waive any applicable law

(including but not limited to any defenses, entitlements, challenges, or clarifications related to the Credible Evidence Rule, 62 Fed. Reg. 8315 (Feb. 27, 1997)) concerning the use of data for any purpose under the Act, generated either by the reference methods specified herein or otherwise.

87. Each limit and/or other requirement established by or under this Consent Decree is a separate, independent requirement.

88. This Consent Decree does not limit, enlarge or affect the rights of any Party to this Consent Decree as against any third parties.

89. This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree, and supersedes all prior agreements and understandings among the Parties related to the subject matter herein. No document, representation, inducement, agreement, understanding, or promise constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

90. The United States and the Defendants shall bear their own costs and attorneys' fees.

## XX. SIGNATORIES AND SERVICE

91. The undersigned representatives of Defendants and the Assistant Attorney General for the United States each certify that he or she is duly authorized to enter into the terms of this Consent Decree and to bind the Party he or she represents to the terms of the Decree.

92. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

93. Each Party hereby agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. **PUBLIC COMMENT**

94. The Parties agree and acknowledge that final approval by the United States and entry of this Consent Decree is subject to the procedures of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, an opportunity for public comment, and the right of the United States to withdraw or withhold consent if the comments disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate. The Defendants shall not oppose entry of this Consent Decree by this Court or challenge any provision of this Consent Decree unless the United States has notified the Defendants, in writing, that the United States no longer supports entry of the Consent Decree.

## XXII. **TERMINATION**

95. This Consent Decree shall be terminated after Defendants have complied for at least twelve (12) consecutive months with the Emissions Reductions and Control requirements in Section IV, and have made the payment of all civil and stipulated penalties in Sections V and IX.

96. To terminate this Consent Decree, Defendants shall submit to the United States, and EPA an affidavit signed by a person responsible for environmental management and compliance for SRU and/or DGS that certifies, in accordance with Paragraph 35, that Defendants have completed and complied with those provisions of the Consent Decree referenced in Section IV above. In addition, Defendants' affidavit shall state that Defendants have complied with those provisions of the Decree for twelve (12) consecutive months. The United States shall (1) submit the affidavit of Defendants to the Court, with a notice that the United States does not object to the termination of this Consent Decree; or (2) notify Defendants that the United States does not agree that Defendants have completed and complied with the requirements of this Consent Decree referenced in Section IV above. In the latter event, the Parties shall attempt to resolve the disagreement within thirty (30) Days after Defendants receive the notice of disagreement from the United States. If the Parties are unable to resolve the disagreement, Defendants shall petition the Court to resolve the disagreement. If the United States does not (1) submit the Defendants' affidavit to the court or (2) notify the Defendants of its disagreement with the affidavit on or before the 90th Day after receiving the affidavit, the Defendants may submit a

motion to the Court for termination which the United States may oppose.  If Defendants petition the Court to resolve a dispute with the United States over termination, or if Defendants submit a motion for termination to the Court, Defendants shall bear the burden of proving that they have complied with the provisions of this Consent Decree referenced in Section IV in such proceedings.

## XXIII.  **FINAL JUDGMENT**

97.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment in the above-captioned matter between the Plaintiff and the Defendants.

SO ORDERED, THIS _____ DAY OF _____, 2010.


_____
UNITED STATES DISTRICT COURT JUDGE

**FOR THE UNITED STATES OF AMERICA:**

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Robert Brook
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044

28

**FOR U.S. ENVIRONMENTAL PROTECTION AGENCY:**

_9/1/10_
Date

SHAWN M. GARVIN
Regional Administrator
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103

_8/19/10_
Date

MARCIA E. MULKEY
Regional Counsel
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103

_8/5/2010_
Date

DENNIS M. ABRAHAM
Senior Assistant Regional Counsel
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103

**FOR THE DEFENDANTS:**

**COMMONWEALTH OF PENNSYLVANIA:**
**DEPARTMENT OF GENERAL SERVICES**

_____     6/29/10
Secretary                           Date

**SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA:**

_____     6-3-2010
President                           Date

30

**APPROVED FOR FORM AND LEGALITY**

_[signature]_          6-24-10
Office of Chief Counsel       Date
Department of General Services

_[signature]_
Office of Chief Counsel       Date
Pennsylvania State System of Higher Education

_[signature]_          7.9.10
Office of General Counsel       Date

_[signature]_          7/16/10
Office of Attorney General

**APPROVED:**

_[signature]_
Controller

31

DAVID J. HICKTON
United States Attorney


s/Paul E. Skirtich
PAUL E. SKIRTICH
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7418
PA ID No. 30440

32